### SULLIVAN v. MEYER.
### No. 6796.

United States Court of Appeals for the District of Columbia.

Decided May 3, 1937.

John D. Fitzgerald, Walter C. English, and George E. Sullivan, all of Washington, D. C., for appellant.

J. Harry Covington, Spencer Gordon, and Fontaine C. Bradley, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the District Court of the United States for the District of Columbia in a libel action sustaining defendant's (appellee's) demurrer to the declaration, plaintiff (appellant) electing to stand thereon.

Plaintiff alleged that he is a fair-minded, sensible, practical, and public-spirited citizen of the District; that in November and December, 1935, he submitted to the Board of Education written protests against the further retention in the public schools of the District of any textbook or study magazine containing anti-patriotic or pro-communistic matter; and urged that, in lieu of such false and deceptive matter, "the real truth about Russian communism," including information about "its evil and atrocious aims and purposes," should be given public school pupils; that in connection with such protests, plaintiff specifically protested against a proposal which had been made to the Board of Education by the Superintendent of Schools that "the schools would not necessarily have to teach everything contained in a book used in classroom work," and could therefore continue in use a book containing objectionable or prohibited matter, it being distinctly asserted by plaintiff to the Board that the course proposed by the Superintendent "would be further circulating the poisonous matter among pupils for their reading" and "a direction to pupils not to read particular matter in a textbook would be calculated to make them especially curious and ensure their reading it." That defendant published in his newspaper (the Washington Post) a number of articles mentioning plaintiff's full name as prosecuting protests to the Board of Education against textbooks in use, and thereby made the readers of the newspaper aware that the name "Sullivan," used in connection with complaints to the Board against textbooks, referred to the plaintiff. That thereafter, on January 20, 1936, the defendant, well knowing the foregoing facts, published in the Washington Post of and concerning the plaintiff a false and malicious libel, headed "Forbidden Russia," which so distorted the

302

facts aforesaid as to make it appear that plaintiff was seeking to prevent pupils knowing anything about Russia; that plaintiff was advocating the course pursued by the Superintendent of Schools; that such course was in accord with "Sullivanian attempts to purge the youth of Washington of their healthy curiosity"; and that the "whole matter" had gotten back to the "farcical basis where it belongs." That the defendant had contrived, in and by such false and distorted assertions, to excite public ridicule and depreciation of plaintiff's character.

The defendant demurred to the declaration on the ground that the publication was "not libelous per se," and, hence, that special damage must be alleged. The court below sustained the demurrer, stating that "the courts have held that a mere pleasantry which may create a smile at the expense of a zealous public minded citizen, but which does not reflect upon his character or hold him up to public ridicule or tend to degrade him is not libelous per se." The question therefore is whether the article complained of is libelous per se.

█ The applicable rule, as stated by Judge Lurton in Commercial Publishing Co. v. Smith (C.C.A.) 149 F. 704, 706, and approved in Washington Post Co. v. Chaloner, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed. 987, reads as follows: "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read."

█ The declaration in the present case discloses that plaintiff, "on behalf" of the Federation of Citizens' Associations of the District of Columbia and also "as the leader or head of, citizenship complaints against conditions in the Public Schools of the District," was engaged in a public controversy with certain public school officials concerning textbooks dealing with Russia and Communism. While the public generally might approve of the course taken by him, it is conceivable that a substantial number of citizens would take the position that plaintiff was unduly alarmed. At all events, the situation was such that legitimate criticism or comment was justifiable. The article complained of goes no farther. It relates exclusively to plaintiff's attitude towards a question of public interest. It does not impugn his character or motives, which we are glad to affirm of our own knowledge are of the highest. In this view, it would be going far to rule that the article, considered in the light of the extraneous facts as disclosed by the record, would subject plaintiff to public ridicule and contempt.

Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554, 556, 53 L.Ed. 960, 16 Ann.Cas. 1075, cited by plaintiff, materially differs in its facts from the present case. In the Peck Case the court ruled that a woman whose portrait is published in connection with an indorsement of a brand of whisky may be seriously hurt in her standing with a considerable number of her neighbors. The court said: "But obviously an unprivileged falsehood need not entail universal hatred to constitute a cause of action. No falsehood is thought about or even known by all the world. No conduct is hated by all. That it will be known by a large number, and will lead an appreciable fraction of that number to regard the plaintiff with contempt, is enough to do her practical harm."

In the present case the plaintiff had patriotically sought to have eliminated from the public schools textbooks containing what he regarded as anti-patriotic or pro-communistic matter—a highly commendable effort on his part. In the Peck Case the woman was falsely charged with indorsing a brand of whisky and her portrait was published in connection with the indorsement. That a very substantial number of persons would regard her with contempt was obvious. The difference in the two cases is apparent.

Judgment affirmed.

Affirmed.