**SWEENEY v. PATTERSON et al.**

No. 7932.

United States Court of Appeals for the District of Columbia.

Argued Feb. 11, 1942.

Decided May 25, 1942.

Rehearing Denied June 30, 1942.

Mr. John O'Connor, of Washington, D. C., with whom Mr. William F. Cusick, of Washington, D. C., was on the brief, for appellant.

Mr. R. H. Yeatman, of Washington, D. C., for appellee Eleanor M. Patterson. Mr. Edgar Turlington, of Washington, D. C., with whom Mr. William A. Roberts, of Washington, D. C., was on the brief, for appellees Drew Pearson and Robert S. Allen. Messrs. O. Max Gardner, Harold F. McGuire, and Seymour Sheriff, all of Washington, D. C., also entered appearances for appellees Drew Pearson and Robert S. Allen.

Mr. Edmund D. Campbell, of Washington, D. C., by special leave of Court, filed a brief on behalf of American Civil Liberties Union as amicus curiae.

Messrs. Louis Ottenberg, of Washington, D. C., and Milton Handler, Ira W. Hirshfield, and Emil Schlesinger, all of New York City, by special leave of Court, filed a brief on behalf of American Jewish Committee, B'nai B'rith, the Jewish Labor Committee and the American Jewish Congress, as amici curiae.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is one of a series of libel suits which appellant brought, in various courts and against various defendants, because of an article which was written by appellees Pearson and Allen and published in appellee Patterson's newspaper, among others. The complaint states that appellant is a member of Congress from Ohio and a member of the Ohio bar. It alleges, in the usual language of libel suits, that appellees intended to and did injure his reputation; but it alleges no special damage. Appellees, in their answers, defended on grounds of privilege and truth. This appeal is from an order granting appellees' motion for judgment on the pleadings.

The article follows. We italicize those sentences which appellant says are false:[1]

"*A hot behind-the-scenes fight is raging in Democratic congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge in Cleveland.* The proposed appointee is Emerich Burt Freed, U. S. District Attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. District Court. *This has aroused the violent opposition of Representative Martin L.*

---

[1] The first and third of the italicized sentences are said to be false "insofar as the plaintiff is concerned."

*Sweeney,· Democrat of Cleveland, known as the chief congressional spokesman of Father Coughlin. Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States.* Born in Hungary in 1897, Freed was brought to the United States at the age of 13, was naturalized 10 years later. Justice Department officials say he has made an excellent record as U. S. Attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association. First on the list was Carl Friebolin, whom Justice Department officials say they would have gladly appointed despite his age of 60, had he not eliminated himself voluntarily for physical reasons. Two others on the Bar Association's list, Walter Kinder and Harry Brainard, were eliminated because of big business or reactionary connections. Last on the list was Dan B. Cull, a former Common Pleas Court judge, and an excellant appointment except that he happens to be a Catholic and the last two judicial appointments in Ohio have been Catholics. So the Justice Department returned to the No. 2 man on the list, a Jew. *Irate, Representative Sweeney is endeavoring to call a caucus of Ohio Representatives December 28 to protest against Freed's appointment."*

 Even if the italicized statements are false, appellant has stated no claim on which relief can be granted. The cases are in conflict, but in our view it is not actionable to publish erroneous and injurious statements of fact and injurious comment or opinion regarding the political conduct and views of public officials, so long as no charge of crime, corruption, gross immorality or gross incompetence is made and no special damage results. Such a

publication is not "libelous per se."[2] We need not consider whether it is· privileged. Appellant might be entitled to relief if he had lost his seat in Congress, or had lost employment, as a lawyer or ·otherwise, or had been put to· expense, or had suffered any other economic injury, by reason of appellees' statements. We do not decide that question, since it is not before us. Appellant alleges no such injury.

Cases which impose liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors. Since Congress governs the country, all inhabitants, and not merely the constituents of particular members, are vitally concerned in the political conduct and views of every member of Congress. Everyone, including appellees and their readers, has an interest to defend, and any one may find means of defending it. The interest of the public here outweighs the interest of appellant or any other individual. The protection of the public requires not merely discussion, but information. Political conduct and views which some respectable people approve, and others condemn, are constantly imputed to Congressmen. Errors of fact, particularly in regard to a man's mental states and processes, are inevitable. Information and discussion will be discouraged, and the public interest in public knowledge of important facts will be poorly defended, if error subjects its author to a libel suit without even a showing of economic loss. Whatever is added to the field of libel is taken from the field of free debate. If other public interests are ·thought to outweigh, in respect to some utterances, the public interest in knowlege and debate, they call for legislative changes in public

---

[2] Sillars v. Collier, 151 Mass. 50, 23 N. E. 723, 6 L.R.A. 680; Lydiard v. Wingate, 131 Minn. 355, 359, 155 N.W. 212. Cf. Coleman v. MacLennan, 78 Kan. 711, 98 P. 281, 20 L.R.A.,N.S., 361, 130 Am. St.Rep. 390; Ross v. Ward, 14 S.D. 240, 85 N.W. 182, 86 Am.St.Rep. 746; Snively v. Record Publishing Co., 185 Cal. 565, 198 P. 1.

The article in suit has repeatedly, though not uniformly, been held not to be libelous per se, e. g., Sweeney v. Philadelphia Record Co., 3 Cir., 126 F.2d 53; Sweeney v. Newspaper Printing Corp., 177 Tenn. 196, 147 S.W.2d 406; Sweeney v. Beacon Journal Publishing Co.,· 66 Ohio App. 475, 35 N.E.2d 471, appeal

dismissed 138 Ohio St. 330, 34 N.E.2d 764; Sweeney v. Caller-Times Pub. Co., D.C.S.D.Tex., 41 F.Supp. 163; Sweeney v. Capital News Pub. Co., D.C.S.D.Idaho, 37 F.Supp. 355. The Court of Appeals for the Second Circuit, by a divided vote, held that it was libelous per se under the law of New York; Sweeney v. Schenectady Union Pub. Co., 122 F.2d 288; and an even division in the Supreme Court sustained that result. 62 S.Ct. 1031, 86 L.Ed. ——, rehearing denied, 62 S.Ct. 1266, 86 L.Ed. ——. But the Supreme Court wrote no opinion, and the question before it, according to our understanding, was whether the ·Second Circuit had correctly interpreted New York law.

law rather than judicial changes in the law of libel.

▮ A. S. Abell Co. **v.** Ingham[3] and Washington Times Co. v. Bonner,[4] on which appellant relies, involved publications which charged officials with crime or gross immorality. Since no such charges are involved here, those cases are not in point. The later case of Sullivan v. Meyer[5] more than covers the present case, for the plaintiff Sullivan was not a public official; he was a representative of unofficial Citizens' Associations of the District of Columbia. His complaint stated that he had asked the Board of Education (1) to drop from the school curriculum a book which he said gave a false picture of Russian communism and (2) to give the pupils the truth about the matter instead. It alleged that the defendant's newspaper had so distorted the facts as to make it appear that the plaintiff sought to prevent pupils from knowing anything about Russia. The defendant demurred. Since his article represented Sullivan as an advocate of ignorance, and the whole matter as "farcical", it was obviously injurious to Sullivan's reputation. But this court sustained the defendant's demurrer, on the ground that the article was not "libelous per se." Though the court characterized the article as criticism or comment, the opinion and the record show that the complaint charged the defendant with injurious distortion of the facts. If, as was necessarily assumed on demurrer, the complaint was true, the defendant did distort the facts. Accordingly the case decided, though the opinion did not say, that injurious distortion of the facts, when it relates "exclusively to plaintiff's attitude towards a question of public interest" and does not "impugn his character or motives,"[6] is not libelous per se.

Affirmed.

---

[3] 43 App.D.C. 582.

[4] 66 App.D.C. 280, 86 F.2d 836, 110 A. L.R. 393.

[5] 67 App.D.C. 228, 91 F.2d 301. The court did not cite the Bonner case, which it had recently decided.

[6] 67 App.D.C. 228, 229, 91 F.2d 301, 302