## WILLIAMS v. ANTI – DEFAMATION LEAGUE OF B'NAI B'RITH et al.

### No. 10579.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 20, 1950.

Decided Dec. 14, 1950.

Mr. Nathan Boone Williams, Washington, D. C., for appellant.

Mr. Henry G. Fischer, Washington, D. C., with whom Mr. Harry S. Wender, Washington, D. C., was on the brief, for appellee Anti-Defamation League of B'nai B'rith.

Mr. Milton I. Baldinger, Washington, D. C., for appellee Adolph J. Sabath.

Before WILBUR K. MILLER and WASHINGTON, Circuit Judges, and ROBERT N. WILKIN, District Judge, retired (sitting by designation).

WILKIN, District Judge.

This is an appeal from summary judgment of the United States District Court for the District of Columbia which dismissed the appellant's libel suit against the appellees. The case was submitted on the pleadings, affidavits and motions of all parties for summary judgment.

The statements alleged by appellant to be libelous were published in the book issued by the appellee, Anti-Defamation League of B'nai B'rith, on or about March 25, 1948, entitled "Anti-Semitism in the United States in 1947," and in the Appendix to the Congressional Record of August 15, 1947, by leave granted to the appellee, Adolph J. Sabath.

Earlier in 1947 Upton Close had published a pamphlet, written by Williams, entitled "The Anti-Defamation League and Its Use in the World Communist Offensive." On the cover of the pamphlet there appeared the following statement by the publisher: "A picture of what more and more Americans regard, with alarm, to be a secret police among us; and its relation to the world movement which threatens our civilization, reported by an Army Reserve Intelligence officer."

And, on the inside cover page, in an editor's note by Close, the following statement was made: "With painstaking care, Major Robert H. Williams (Military Intelligence, Reserve), counter-intelligence, as conscientious an officer as our military intelligence ever had, and a contributor to the Encyclopaedia Britannica supplement, 'Ten Eventful Years,' has prepared the following report."

The League considered such statements by Close an "attempt to cloak the * * * discredited canards against the League and the Jewish community in general with the ostensible and pretended authority of the U. S. Military Intelligence * * *" Anxious to ascertain the official status of Williams, the National Chairman of the League, Meier Steinbrink, wrote to the then Secretary of War, Robert P. Patterson, on May 1, 1947, asking for an official War Department statement with respect to appellant's ·military record. On May 28, 1947, Secretary of War Patterson replied as follows:

"Mr. Williams served as a major in the Army of the United States (Air Corps) during World War II. He was for a time an intelligence officer in the air squadron overseas, but he was not concerned, in that capacity, with the investigation of Communists or any subversives. His work ·had to do with weather and air intelligence. He is not now a member of the Air Reserve and is no longer connected with the military service.

"Any statement made by Mr. Williams was not made as an agent of the War Department, but was made as a civilian without the consent of or prior approval of the War Department. His statements cannot be considered as reflecting the attitude of the War Department.".

At about the same time, according to an uncontroverted affidavit, the Washington office of the League communicated with the Military Intelligence Section of the General Staff (G-2) and was advised by the executive officer of Military Intelligence, Colonel Carter Clark, that Williams "is not and never was a member of Military Intelligence; that Military Intelligence is G-2; and that nobody who is not in G-2 is in Military Intelligence."

On July 10, 1947, appellant became "an officer in the Military Intelligence Reserve," according to his affidavit.

The complaint set forth three particulars in which the publication of the League was libelous:

"(1) Plaintiff described as among those which 'expressed unfriendly sentiment in 1947.'

"(2) Plaintiff described as 'Alleged author.'

"(3) The statement: 'it was revealed that Mr. Williams is not, and never was a member of Military Intelligence or Military Intelligence Reserve.'"

Williams contended that the words used by the League with respect to him "being untrue in fact are actionable per se."

On or after July 26, 1947, appellee Sabath, a member of the House of Representatives of the United States, caused to be published in the Appendix of the Congressional Record the letter from the Secretary of War to Meier Steinbrink, together with a prefatory statement by Sabath. The appellant contended that such "extension of alleged remarks not made in speech or debate in either House of Congress containing divers and sundry false statements and innuendo with respect to this plaintiff and made with malicious intent" was "outside the protection of the immunity provision of the Constitution of the United States."

The trial court sustained the motions of both appellees and entered final judgment in their favor. There was no opinion, but the court filed the following memorandum:

"Both of defendant's motions for summary judgment granted.

"Reasons: 1. Dickins v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, 84 U.S.App. D.C. 51, 171 F.2d 21–24.

"2. Privilege absolute. (Congressional)."

This court affirms the judgment, but for different reasons. This court finds that the statements complained of in the Appendix of the Congressional Record and in the publication of the League were not libelous, not defamatory of appellant, not malicious, and were true, if considered in connection with their context, the conditions of the parties, and their purpose and exact meaning.

■ We find nothing actionable or slanderous in the League's listing of appellant's pamphlet as one among others "which expressed unfriendly sentiment in 1947." Taking all the circumstances into consideration, it cannot be said the implication that the pamphlet expressed unfriendly sentiment is false or unwarranted, or injurious.

■ Neither do we find the phrase "Alleged author" untrue, unwarranted or injurious.

Now as to the third statement complained of, it must be borne in mind that it was directed against the assertion of Upton Close and that it was based upon the letter of the Secretary of War, which was true when written. By the time of the League's publication, appellant had become "an officer in the Military Intelligence Reserve." But the full sentence in the League's book was: " * * * Close's effort to lend the pamphlet the authority of the U. S. Military Intelligence was thoroughly defeated when it was revealed that Mr. Williams is not, *and never was* a member of Military Intelligence or Military Intelligence Reserve." (Emphasis added.)

The purpose of the statement was to show that Close's comment about the author was not true, and in that particular the statement was correct. In military parlance there is a difference between intelligence service in an air squadron and service in the Military Intelligence Section of the General Staff (G-2).

■ A record of military service is, of course, an honor and a credit, but it is no libel to say a man lacks it. Many worthy citizens are without military honors. To say a man falsely claimed military rank is defamatory. As this court said in Bailey v. Holland, 1895, 7 App.D.C. 184, 189: "Any published writing that imputes criminal or dishonest conduct to another, or that tends to disgrace him and bring him into hatred, contempt or ridicule, is a libel."

But that was not the import of the publication of the League. It merely refuted Close's statement about appellant. If there was any slight reflection or innuendo against appellant, it is *damnum absque injuria.*

In Sullivan v. Meyer, 1937, 67 App.D. C. 228, 229, 91 F.2d 301, 302, this court quoted from Commercial Publishing Co. v. Smith, 6 Cir., 1907, 149 F. 704, 706–707, as follows: " * * * 'A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not.' "

The court went on to say, in 67 App.D.C. at page 229, 91 F.2d at page 302: " * * * At all events, the situation was such that legitimate criticism or comment was justifiable. The article complained of goes no farther."

And in Somerville v. Acacia Mutual Life Ins. Co., 1945, 80 U.S.App.D.C. 144, 149 F. 2d 836, this court said: "One part of the language on which the plaintiff relied in this action for libel was incapable of a defamatory meaning. The other part was obviously true. Regardless of the defense of privilege, therefore, the District Court was right in directing a verdict for the defendant."

■ The chronology of events reveals that the alleged libelous statements were published by appellee Sabath a short time after appellant had become a member of Military Intelligence Reserve, and some months later by the League. But their avowed purpose was to expose the falsity of the statements by Close at the time he published the Williams pamphlet, and to that end they were justified. They were based on the letter from the Secretary of War, which was true when written and which gave appellant's military record. They were not malicious or libelous as to Williams.

Entertaining the views expressed, it is not necessary for the court to rule on the pleas of privilege.

Affirmed.