**Bob HOFFMAN, Plaintiff,**

v.

**The WASHINGTON POST COMPANY, Gabe Mirkin, M. D., and Howard Simons, Defendants.**

**Civ. A. No. 76–1197.**

United States District Court, District of Columbia, Civil Division.

June 23, 1977.

601

Charles E. Robbins, Washington, D. C., for plaintiff.

Kevin T. Baine, Laidler B. Mackall, Loren Kieve, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is a libel action against the Washington Post Company, publisher of *The Washington Post*, Howard Simons, Managing Editor of *The Washington Post*, and Gabe Mirkin, a medical doctor recognized as an expert in the field of sports medicine. Plaintiff is President of the York Barbell Company of York, Pennsylvania, and a trainer of athletes. He also publishes magazines, writes articles, and lectures on health and body building and sells dietary supplements. The matters now before the Court are defendants' motions for summary judgment. Plaintiff has filed oppositions to said motions.

On April 29, 1976, *The Washington Post* published an article by defendant Mirkin entitled "How Valuable Are Training Tables and Protein Diets?" That article is the subject of this lawsuit. The article read, in part:

Twenty-five years ago, many national weight lifting champions came from York, Pa. Bob Hoffman, coach of the York team wrote several articles crediting his team's success to a high-protein diet. Because he sold "Hoffman's High Protein Tablets", he made a great deal of money and drove a Rolls Royce. But many other athletes who bought Hoffman's food supplements were unable to equal the performance of Hoffman's athletes. It was later discovered that many of his athletes were on anabolic steroids. Hoffman's protein supplements were valueless to everyone except Mr. Hoffman. The fact that weight lifters still waste their money on protein supplements is an example of how difficult it is to dispel false concepts. As for Bob Hoffman, he died five years ago of a heart attack.

The Washington Post, Apr. 29, 1976, Section E, at 9, col. 1. Plaintiff complains that the following five statements from that article are defamatory:

(1) "Because he sold 'Hoffman's High Protein Tablets,' [plaintiff] made a great deal of money. . . ."

(2) "Because he sold 'Hoffman's High Protein Tablets,' [plaintiff] . . . drove a Rolls Royce."

(3) "It was later discovered that many of [plaintiff's] athletes were on anabolic steroids."

(4) "Hoffman's protein supplements were valueless to everyone except Mr. Hoffman."

(5) "As for Bob Hoffman, he died five years ago of a heart attack."[1]

## 1. *The Common Law Defenses of Truth and "Fair Comment."*

■ Defendants maintain that two of the five alleged defamatory statements are not defamatory. Those statements are that plaintiff drove a Rolls Royce as a result of selling high protein tablets and that plaintiff died five years ago of a heart attack. The Court need not determine whether these two statements, standing by themselves, are defamatory. They were not published standing by themselves. They were published in context. The Court's function is to determine whether the publication, taken as a whole, is defamatory, not whether two isolated statements might not be defamatory if published by themselves.

■ Likewise, the Court need not determine whether two of the other statements, that plaintiff "made a great deal of money" from selling protein supplements and that it was "later discovered that many of [plain-

---

1. Plaintiff himself isolated these five statements in his complaint. The parties have continued to quote them in this isolated and fragmented fashion throughout these proceedings. The Court has no objection to this manner of quoting the alleged defamatory statements as a matter of convenience. At this time, however, it is impossible for the Court to consider the five statements as discrete units, for the challenged publication must be read as a whole.

Its content must be considered in its entirety and weighed in connection with its structure, nuances, implications, and connotations. *Afro-American Publishing Co. v. Jaffe*, 125 U.S.App. D.C. 70, 366 F.2d 649, 655 (1966) (en banc); *Clark v. Pearson*, 248 F.Supp. 188, 190 (D.D.C. 1965) (Holtzoff, J.), *citing Washington Post Co. v. Chaloner*, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed. 987 (1919).

tiff's] athletes were on anabolic steroids," are true, as maintained by defendants. While truth is a "justification" and complete defense in a libel action, the defendant may not avoid liability by proving that the imputation was true in part. *Clark v. Pearson*, 248 F.Supp. 188, 191 (D.D.C.1965). W. Prosser, *The Law of Torts* § 116, at 798 (4th ed. 1971). The question to be determined is whether the publication, taken as a whole, is true. Since the truth of the article in question, taken as a whole, is disputed, the issue of its truth renders this case inappropriate for summary judgment on this ground.

■ Speaking generally, the proper approach to defendants' motions for summary judgment based on the usual common law defenses is to first determine (a) whether the publication is capable of bearing a particular meaning and (b) whether that meaning is defamatory. Restatement (Second) of Torts § 614 (1977). The meaning of the article must first be determined, *Clark, supra*, at 191, construing its words together in context. Restatement (Second) of Torts § 563 & comment d (1977); *Williams v. Anti-Defamation League of B'nai B'rith*, 88 U.S.App.D.C. 99, 185 F.2d 1005, 1007 (1950). In the instant case, there is no material dispute over the meaning of the article in question. In addition, the Court finds its meaning unambiguous after an independent review. Accordingly, the Court has two functions, to construe the publication and to determine whether its meaning is defamatory.

■ The Court construes defendant Mirkin's article to mean: "Bob Hoffman greatly enriched himself by selling valueless protein supplements using successful athletes who were really on anabolic steroids." As so construed, the Court finds that defendant Mirkin's article was defamatory because it imputed dishonest conduct to Bob Hoffman and tended to disgrace him and bring him into ridicule. *See Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 366 F.2d 649, 654 (1966) (en banc); *Bailey v. Holland*, 7 App.D.C. 184, 189 (1895).

The law of defamation is threaded with rules for proving damages, privileges, and defenses, any one of which may deprive a plaintiff of the relief he seeks. One of these defenses, the defense of truth, has been raised by defendants, discussed above, and found not to be dispositive of these motions for summary judgment for the reason that this defense raises genuine issues of material fact.

Defendants have also asserted as an additional defense, the common law privilege of "fair comment" on matters of public concern. The Court need not determine whether this privilege of "fair comment" or "fair statement" would be applicable under the common law of this jurisdiction, since the Supreme Court has now made the privilege a constitutional one under the First Amendment and federal standards now apply. Defendants have not raised any other dispositive issues that are ripe for summary judgment. The Court must therefore reach the constitutional issues presented by this case.[2]

#### 2. The Constitutional Defense.

■ Under the law of the First Amendment as set forth by the Supreme Court, a public figure involved in an issue may not recover damages for a defamatory falsehood relating to that issue unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (applying standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Defendants contend that plaintiff

---

**2.** It is possible that defendant Simons' motion for summary judgment could be granted on the basis that as the managing editor of a large daily metropolitan newspaper who did not read the article in question prior to its publication and had no duty to read it, Simons cannot be held liable for defamation. *See Knoxville Publishing Co. v. Taylor*, 31 Tenn.App. 368, 215 S.W.2d 27 (1948). Since the Court would have to reach the constitutional issues with respect to the other defendants in any case, however, it has chosen not to decide this issue.

is a "public figure," seek to apply the *Curtis* standard concerning public figures to plaintiff, and conclude that the alleged defamation was not published with actual malice. Plaintiff would have us hold that he is not a public figure and therefore not subject to the *Curtis* standard. Furthermore, plaintiff argues that even if we hold he is a public figure, a genuine issue of material fact exists—whether the article was published with "actual malice"—which should be left for a jury to decide and which precludes a grant of summary judgment.

■ All parties agree that it is for the Court to decide whether plaintiff is a public figure, and this is in accord with the pertinent authorities. *See Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 and authorities cited n. 15 (1966); *Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440, 444 (S.D.Ga.1976); *Hotchner v. Castillo-Puche*, 404 F.Supp. 1041, 1045 (S.D.N.Y. 1975). The test to determine whether a plaintiff is a public figure was recently set forth by the Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974). There, the Court wrote that a determination that a plaintiff is a public figure

> [M]ay rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. *More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.* In either case such persons assume special prominence in the resolution of public questions.

*Id.* (emphasis supplied).

■ In the instant case, plaintiff has admitted that the subject of protein supplements and their value, the subject of the article in question, is a matter of general or public interest and concern. Plaintiff's Admissions, paras. 10, 11 (filed Jan. 18, 1977). He has also admitted that he has achieved general fame or repute throughout the United States in the field of protein supple-

ment products, *id.*, para. 4, and that he has been an outspoken and public advocate of the use and value of protein supplement products, *id.*, para. 8. The record discloses that plaintiff has achieved his admitted prominence in the field of protein supplements by serving as editor and publisher of *Strength and Health* magazine since 1932 and by writing at least 67 books, giving thousands of lectures, and appearing thousands of times on radio and television.

Given these undisputed facts, we have concluded that the subject of protein supplements and the need for them is a "public controversy" within the meaning of *Gertz*. We note that countless publications have published articles on this issue over the past several years, that it has been a subject of much activity in Congress, and that it is presently the subject of a proceeding before the Federal Trade Commission. We also conclude that plaintiff has voluntarily injected himself into this public controversy. We therefore hold that under the second alternative basis of *Gertz, supra*, plaintiff is a public figure for a limited range of issues, namely protein supplements and their value, and that in order to recover damages for a defamatory falsehood relating to that issue he must prove that the statement was made with "actual malice" within the meaning of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ In view of the above holdings, we consider the issue of "actual malice." Judge Wright of our Court of Appeals has written that once a district court reaches the issue of "actual malice" in a *New York Times Co. v. Sullivan* case, it should decide the issue in the first instance on the basis of pretrial affidavits, depositions, or other documentary evidence and grant summary judgment to the defendant unless the court finds that the plaintiff can prove actual malice. *Wasserman v. Time, Inc.*, 138 U.S. App.D.C. 7, 424 F.2d 920, 922, *cert. denied*, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970) (Wright, J., concurring). The Supreme Court has made it clear that plaintiff's proof of "actual malice" must meet a

"clear and convincing proof" burden rather than the less stringent "preponderance of the evidence" burden which is the normal standard in civil actions. *Gertz, supra,* 418 U.S. at 342, 94 S.Ct. 2997; *Wolston v. Reader's Digest Ass'n,* 429 F.Supp. 167, 179 (D.D. C.1977). It is also clear that actual malice must be proven with regard to *each* defendant. *Phoenix Newspapers, Inc. v. Church,* 24 Ariz.App. 287, 537 P.2d 1345, 1360 (1975), *appeal dismissed,* 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 759 (1976). In order to prove actual malice, plaintiff must be able to demonstrate that each defendant had a "high degree of awareness of. . . . probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). "There must be sufficient evidence to permit the conclusion that the defendant[s] in fact entertained serious doubts as to the truth of [the] publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

■ The record in this case fails to demonstrate that plaintiff could produce clear and convincing evidence that each defendant acted with actual malice. With respect to defendant Simons, it is undisputed that he did not read the article in question prior to its publication. With respect to the Washington Post Company, there is hardly a scintilla of evidence that any of its employees was aware of the probable falsity of the article's statements regarding plaintiff. Indeed, defendants have introduced substantial evidence indicating that the Post Company had every reason to trust the reliability of defendant Mirkin's article. Moreover, since the issue of actual malice focuses on the defendant's state of mind, his attitude toward the truth or falsity of the material published, *Wolston, supra,* at 179, it is significant and tends to negate any inference of actual malice on the part of the Post Company that it published a retraction of the indisputably inaccurate portions of the Mirkin article in the next day's edition of *The Washington Post.* With respect to defendant Mirkin, there is some evidence that he might have been more precise in checking his sources. It seems that several of the alleged defamatory statements were based on vague recollections and that others were overly broad generalizations. This evidence, however, falls far short of raising a genuine issue that he may have acted with an awareness of the probable falsity of his statements or with utter disregard of whether there were false or not.

Accordingly, there being no material facts in dispute, all defendants are entitled to judgment as a matter of law.

An Order will issue this date.