

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00275-CV

———————————————

RICHARD A. WEBER, ERIC ELAM, AND JOE PALMER, Appellants

V.

FRANK FERNANDEZ, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-299878-18

Before Gabriel, Pittman, and Bassel, JJ.
Memorandum Opinion by Justice Bassel
Dissenting and Concurring Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

## I. INTRODUCTION

This interlocutory appeal arises from the trial court's order denying Appellants Richard A. Weber's, Eric Elam's, and Joe Palmer's Texas Citizens Participation Act (TCPA) motion to dismiss.

Many understandably find the tenor of today's political discussion unpleasant. But the TCPA protects those who speak on matters of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. Undoubtedly, the statements in this case—directed toward a public official, Appellee Frank Fernandez, who had recently pled guilty to a criminal offense, resigned from public office, and continued to participate in political activities—fall within the ambit of the TCPA. The legislature has made its decision that the subjects of legal actions falling within the ambit of the TCPA may immediately put those bringing the action to the task of establishing "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). And the burden to make the prima facie showing in this case is enhanced by another rule of law designed to foster free—though perhaps unpleasant—speech. That rule requires clear and specific proof by a plaintiff who is a public figure that the defamatory statements were made with actual malice.

Here, the allegedly defamatory statements at issue were not made of whole cloth—the public record demonstrates that although the trial court deferred an adjudication of guilt, Fernandez had recently pleaded guilty to a charge of

misdemeanor theft. *See* Tex. Penal Code Ann. § 31.03(e)(3). Instead, Fernandez challenges how Appellants characterized the disposition and nature of the offense that no one disputes occurred. We agree that Appellants made statements that mischaracterized both the disposition and the nature of the offense and that those mischaracterizations appear blatant to lawyers and judges who devote themselves to parsing the distinctions that Appellants misstated. But we do not analyze the statements through a lens so finely tuned to the intricacies of the law. Our lens focuses on whether the statements were substantially true as perceived by a person of ordinary intelligence. And again, at the TCPA stage, Fernandez carries the burden to establish by clear and specific prima facie proof that Appellants made the statements while acting with actual malice.

These principles guide our resolution of this appeal in two ways. First, analyzed through the lens of substantial truth perceived by a person of ordinary intelligence, we conclude that the mischaracterization of the disposition of the criminal offense was not defamatory. Second, we conclude that Fernandez failed to present clear and specific evidence to make a prima facie showing that Appellants mischaracterized the offense while acting with actual malice. But because Appellants failed to challenge Fernandez's claim for intentional infliction of emotional distress (IIED) in their TCPA motion to dismiss or on appeal, we affirm in part and reverse and remand in part.

3

## II. Background

### A. Factual Background

This controversy began with a conflict between Fernandez and Janie Woodside Joplin. Fernandez is a former councilmember of the City of Kennedale; Joplin is a current councilmember of the City of Kennedale. According to Fernandez, his relationship with Joplin has been problematic since 2016 when Joplin's husband "physically accosted" him, and Fernandez in turn filed charges against him.

Fernandez's service as a councilmember ended in 2017 after legal troubles of his own. While still a councilmember, he was charged with the offense of Class A misdemeanor theft for allegedly stealing a silver bar worth more than $750 but less than $2,500. *See id.* As part of a plea bargain, Fernandez pleaded guilty to the offense. He was placed on deferred adjudication-community supervision, was fined $500, and was ordered to pay court costs. Fernandez resigned from his position as a councilmember around the same time that he pleaded guilty.

Fernandez claims that when he subsequently became involved in an effort to obtain signatures to support a petition to recall Joplin (who had recently been elected as a councilmember), Appellants and Joplin began "a smear campaign" against him by using a variety of media to publish "false and defamatory statements"—that he is "a convicted criminal" and a "known thief," that he "committed robbery while being a Kennedale city council member," that "he lied when gathering signatures for a Kennedale political campaign," and that he took part in "corruption and cover-up."

4

Fernandez also alleged that Elam stopped him in the middle of the road and began filming him as an "intimidation tactic."

## B. Procedural Background

Fernandez filed a lawsuit against Appellants and Joplin, asserting claims for statutory defamation by libel, common law defamation by libel and libel per se, defamation by slander, and IIED.[1] Fernandez also sought temporary and permanent injunctive relief. Fernandez filed a supplement to his pleading in which he asserted a claim against Appellants for conspiracy to defame.

Fernandez complained about the following communications from Appellants that he contends are defamatory:

> 4.8 Defendants . . . falsely *told two of Fernandez's neighbors that Fernandez was a convicted criminal.* Said two neighbors were [formerly] friendly and cordial to Fernandez, but they no longer speak with Fernandez since Defendants made the false and defamatory statements. Elam has stopped in the middle of the road and filmed Fernandez as an intimidation tactic. Joplin, Elam[,] and Weber hired Palmer to assist them in their harassing campaign against Fernandez.

> 4.9 *Elam sent and published a bullying text message about Fernandez to Erin Matthews on a Facebook group* aimed at Kennedale residents. Always the gentleman, in the message 'internet tough-guy' Elam insulted Ms. Matthews in a threatening manner (warning said lady not to "run your slobbering mouth"), and falsely stating that "*Frank [Fernandez] is a convicted criminal, he [committed] robbery while being a Kennedale city council member.*" Fernandez is not a convicted criminal, and has never even been charged with (much less committed) robbery.

---

[1]Fernandez eventually settled with Joplin and dismissed her from the lawsuit. She is not a party to this appeal.

4.10 *Elam, Joplin[,] and Weber posted false and defamatory statements about Plaintiff on "Kennedale Voters Group[,"] an electronic Facebook group/forum* that Elam, Joplin, and Weber served as administrators for. *Elam, Joplin, and Weber caused a video to be published on Facebook's Kennedale Voters Group, bearing a heading "Mayor is Associated with convicted robber before and after being found guilty[,"]* which described the Kennedale Mayor's association with Fernandez, *falsely stating that Fernandez was a "convicted robber" and had been "found guilty[,"]* neither of which were true.

. . . .

4.12 Texas Debt Watch, an online Facebook group run by Palmer, published a video online with the heading "Store Owner Rejoices as Profits Go Back to Normal After Former City Councilman's Foiled Heist." *Said video, published by Palmer online, also described Fernandez as a "known thief[,"] that "he stole from somebody[,"] and that he lied when gathering signatures for a Kennedale political campaign.* After receiving a criminal trespassing warning from the Kennedale Police Department, *Palmer also implied on a Facebook video that [the] Mayor and Fernandez took part in corruption and cover-up.* [Emphasis added.]

Appellants filed a TCPA motion to dismiss, contending that Fernandez's claims were based on, related to, or in response to the exercise of their rights of free speech.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003. Fernandez filed a response and objections to Appellants' declarations that were attached to their motion. The trial court considered the motion to dismiss by submission before signing an order indicating that it would sustain Fernandez's objections to Appellants' declarations,

---

[2]Although Appellants' TCPA motion to dismiss broadly stated that all of Fernandez's "claims" were based on, related to, and in response to their exercise of their rights of free speech, the motion did not specifically assert that Fernandez's claims for IIED and conspiracy implicated the TCPA, nor did it challenge Fernandez to set forth clear and specific evidence of the elements of these claims. The effect of this is discussed in section (V)(D) of this memorandum opinion.

6

except that Appellants would be permitted to cure the formal defects in the declarations.[3] The order then stated that the failure to cure the defects would result in the denial of the TCPA motion to dismiss but that if the defects were cured, the trial court would grant the motion to dismiss.

Appellants filed "improved" declarations and submitted a proposed order granting the motion to dismiss, but the trial court signed an order denying the motion. The order stated that the trial court had considered "the pleadings, the evidence and arguments of counsel," and while the trial court acknowledged its prior order indicating that it would grant the motion if the declarations' formal defects were cured, the trial court stated that it "undertook a complete review of the matter and decided to [deny] the motion."

### III. ISSUES ON APPEAL

Appellants raise three issues challenging the denial of their TCPA motion to dismiss: (1) the trial court erred by deciding that Fernandez's defamation claims

---

[3]It is worth mentioning that the trial court's order included a footnote suggesting to the parties that Texas Rule of Civil Procedure 166a(f)—the rule concerning summary-judgment affidavits—was instructive for curing formal defects in Appellants' declarations. Although our analysis does not turn on the admissibility of Appellants' declarations, we mention that in a slightly different context, our colleague, Justice Kerr, has expressed skepticism about the applicability of the standards articulated in rule 166a in resolving a TCPA motion to dismiss, and we adopt and reiterate that skepticism here as it relates to the admissibility of TCPA affidavits. *Cf. Mogged v. Lindamood*, No. 02-18-00126-CV, 2018 WL 6920502, at *12–14 (Tex. App.—Fort Worth Dec. 31, 2018, pet. filed) (mem. op.) (Kerr, J., dissenting and concurring) (calling into doubt the applicability of rule 166a standards to resolve a TCPA motion to dismiss).

against them are not based on, related to, or in response to the exercise of their rights of free speech; (2) the trial court erred by deciding that Fernandez had established by clear and specific evidence a prima facie case for each element of his defamation claims, including that Appellants acted with actual malice because they contend Fernandez is a public figure; and (3) the trial court erred by deciding that Appellants had failed to establish by a preponderance of the evidence each element of their defense to the defamation claims. Although he disagrees with each contention, Fernandez focuses the majority of his brief on his contention that because he is no longer a city councilmember, he should not be considered a public figure and therefore should not be subjected to the heightened intent element of actual malice to establish his defamation claims.

## IV. STANDARD AND SCOPE OF REVIEW

We review a trial court's ruling on a motion to dismiss under the TCPA de novo. *United Food & Commercial Workers Int'l Union v. Wal–Mart Stores, Inc.*, 430 S.W.3d 508, 511 (Tex. App.—Fort Worth 2014, no pet.). In our de novo review, "the unique language of the TCPA" dictates that we decide the initial question of the TCPA's applicability based on a "holistic review of the pleadings." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018). After resolving the initial question of applicability, we review a trial court's TCPA determination based on "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

8

## V.  DISCUSSION

## A.  The Texas Citizens Participation Act

The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding).  The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

"To effectuate the [TCPA's] purpose, the [l]egislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017).  Under the first step,

> a movant [defendant] seeking to prevail on a motion to dismiss under the TCPA has the burden to "show . . . by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant's] exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association."[4]

*Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 872 (Tex. App.—Austin 2018, pet. filed) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)).  The Supreme Court of Texas holds that because the basis of a legal action is determined by the plaintiff's

---

[4]The TCPA provides specific definitions for each of the rights it protects.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)–(4).

allegations, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant[s] need show no more" to satisfy the first step of the TCPA analysis and bring themselves within the TCPA's protections. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

"Under the second step, if the trial court determines that the movant [defendant] has met his burden to show that the TCPA applies, the burden shifts to the nonmovant [plaintiff] to establish 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Grant*, 556 S.W.3d at 872–73 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* Clear and specific evidence ultimately means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591.

But even if the nonmovant/plaintiff satisfies this step-two burden and presents a prima facie case by clear and specific evidence, "the trial court must dismiss the legal action if the [defendant] establishes by a preponderance of the evidence each essential element of a valid defense to the [plaintiff's] claim." *Grant*, 556 S.W.3d at 873 (internal quotation marks omitted); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d) ("Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal

10

action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.").

Finally, the TCPA provides that if the trial court grants a TCPA motion to dismiss, it "shall" award the moving party

> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

> (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). Our court has held that "[a]lthough the trial court [is] required by section 27.009[(a)(2)] to award some amount of sanctions, it ha[s] the discretion to award only a nominal amount, such as $1.00," as long as the mandatory award of attorney's fees and costs is already sufficient to deter the plaintiff from bringing similar actions. *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 613, 615 (Tex. App.—Fort Worth 2017, pet. denied).

## B. Analysis of Step One

In their first issue, Appellants argue that the trial court erred by concluding that they had failed to establish their step-one burden—that is, Appellants contend that they established by a preponderance of evidence that Fernandez's lawsuit is based on, relates to, or is in response to their exercise of their rights of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). We agree. The lawsuit is related to the

11

right of free speech because it involved communications made in connection with a matter of public concern.

The TCPA defines the "exercise of the right of free speech" as consisting of "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The TCPA defines a "matter of public concern" as including an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). The TCPA defines a "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Fernandez does not argue that the statements to his neighbors or those contained in the videos, Facebook message, and postings are not "communications" as defined by the TCPA, and our research reveals no reason to conclude otherwise. *See id.*; *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798 (Tex. App.—Fort Worth 2018, pet. filed) (explaining that the breadth of the TCPA's definition of communication extends the application of the TCPA to "[a]lmost every imaginable form of communication, in any medium" (quoting *Adams*, 547 S.W.3d at 894)). Thus, we focus our analysis on whether the communications were made in connection with a "matter of public concern."

Fernandez's defamation claims are predicated on statements to Fernandez's neighbors that he was a "convicted criminal"; the message that Fernandez is a

12

convicted criminal who committed "robbery"; posting a video on a Facebook group page and captioning it with the statement that Fernandez is a "convicted robber" who had been "found guilty"; posting a video on a different Facebook group page stating that Fernandez was a "known thief" who "stole from somebody"; the video itself which stated that Fernandez had engaged in a "failed robbery"; and the insinuations in the video that Fernandez was part of "corruption" and a "cover-up" when he resigned from city council and that he had lied while gathering signatures for a political campaign. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). Thus, Fernandez's pleading establishes that his defamation claims are based on, related to, or are in response to communications. *See Cavin v. Abbott*, 545 S.W.3d 47, 69 (Tex. App.—Austin 2017, no pet.) (concluding that the plaintiffs' claims "relate to" the defendants' "exercise of the right of free speech" because "there is some sort of connection, reference, or relationship" between the claims and the exercise of the right of free speech).

We agree with Appellants that the challenged statements are communications made in connection with a matter of public concern because they were made during a political contest—i.e., a petition to recall an elected councilmember—and because they are related to the charge and prosecution of Fernandez for the crime of theft while he was a city councilmember, as well as to the circumstances surrounding his resignation from the city council. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7); *Lane v. Franks*, 573 U.S. 228, 241, 134 S. Ct. 2369, 2380 (2014) (explaining that

13

"[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political . . . concern to the community" (internal quotation marks omitted)); *Adams*, 547 S.W.3d at 896, 898 (holding appellate court erred in concluding that defendants failed to meet their step one TCPA burden, in part, because plaintiff's allegation that a developer and HOA repeatedly violated the law and engaged in corrupt or criminal activity is a matter of public concern); *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) ("Public matters include, among other things, 'commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions.'" (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1045 (1975))).

Therefore, because we conclude that Appellants satisfied their burden under step one and demonstrated by a preponderance of evidence that Fernandez's defamation claims are based on, related to, or in response to Appellants' exercise of their right of free speech, we sustain Appellants' first issue.[5]

## C. Analysis of Step Two

Having concluded that Appellants satisfied step one, we now turn to Appellants' second issue—that Fernandez failed to carry his burden and establish by

---

[5]Because we reach this conclusion based solely on Fernandez's pleadings, we need not resolve the objections to and the issue of the admissibility of Appellants' declarations. *See* Tex. R. App. P. 47.1; *Hersh*, 526 S.W.3d at 467 ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more."); *DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 850 (Tex. App.—Fort Worth 2018, no pet.).

14

clear and specific evidence a prima facie case for each essential element of his defamation claims.

"To maintain a cause of action for defamation, the plaintiff must establish that the defendant (1) published a false statement about the plaintiff; (2) that was defamatory; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *Grotti v. Belo Corp.*, 188 S.W.3d 768, 774 (Tex. App.—Fort Worth 2006, pet. denied); *see also Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Ghrist v. MBH Real Estate LLC*, No. 02-17-00411-CV, 2018 WL 3060331, at *4 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op.). Fernandez's burden turns on whether he occupied the status of a public figure at the time of publication of Appellants' statements, which we conclude that he did.

### 1. Public Figure or Public Official Status

To succeed on a defamation claim, private plaintiffs must prove that the defendant was at least negligent, whereas public officials and public figures must establish a higher degree of fault—they must prove that the defendant published a defamatory falsehood with actual malice, that is, with "knowledge that it was false or with reckless disregard of whether it was true or not." *Neely v. Wilson*, 418 S.W.3d 52, 69 (Tex. 2013); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 726 (1964); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 162 (Tex. 2004).

15

In a defamation context, "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 676 (1966). A public official's position "must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* at 86 n.13, 86 S. Ct. at 677 n.13. While not every public employee is a public official, the rule is not limited to the upper echelons of government. *Villarreal v. Harte–Hanks Comm'ns, Inc.*, 787 S.W.2d 131, 134 (Tex. App.—Corpus Christi 1990, writ denied).

Elected city councilmembers and candidates for city council are public officials. *See Schofield v. Gerda*, No. 02-15-00326-CV, 2017 WL 2180708, at *12 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) ("[A] 'public official' includes anyone who holds, by election or appointment, a public office."); *Colson v. Grohman*, 24 S.W.3d 414, 420 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (same); *Ross v. Labatt*, 894 S.W.2d 393, 395 (Tex. App.—San Antonio 1994, writ dism'd w.o.j.) (same). Although the parties disagree as to whether Fernandez was still a city councilmember at the time of the allegedly defamatory statements, it is undisputed that Fernandez was a city councilmember from 2011 through at least 2017. Thus, Fernandez was a public official while he was a city councilmember and a candidate for city council. *See Schofield*, 2017 WL 2180708, at *12.

But according to Fernandez's affidavit testimony, he resigned from city council on May 2, 2017, and all of the disputed statements occurred after his resignation. So, we must decide if Fernandez as a former public official was still a public figure or if he lost that status after resigning from his public office. Because neither the parties' briefs nor our research revealed that any Texas courts have addressed this issue, we will look to federal case law for guidance. *Cf. McLemore*, 978 S.W.2d at 571–72 (adopting the Fifth Circuit's three-part test in defamation case to assess whether an individual is a limited-purpose public figure); *Schofield*, 2017 WL 2180708, at *12 ("In this [public figure] determination, federal, not state, standards apply.").

The Supreme Court of the United States has not yet decided "whether or when an individual who was once a public figure may lose that status by the passage of time." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 166 n.7, 99 S. Ct. 2701, 2706 n.7 (1979). However, both the United States Supreme Court and the Fifth Circuit Court of Appeals have suggested that "there may be cases where a person is so far removed from a former position of authority that comment on the manner in which he performed his responsibilities no longer has the interest necessary to justify the *New York Times* rule." *Rosenblatt*, 383 U.S. at 87 n.14, 86 S. Ct. at 676 n.14; *Belli v. Orlando Daily Newspapers*, 389 F.2d 579, 588 (5th Cir. 1967) (quoting *Rosenblatt*).

In *Zerangue v. TSP Newspapers, Inc.*, the Fifth Circuit considered and rejected the plaintiffs' contention "that the passage of nearly six years between their discharge [from public office] and the publication of the two [allegedly defamatory] articles had

17

returned them to private figure status." 814 F.2d 1066, 1069 (5th Cir. 1987). The Fifth Circuit noted that the plaintiffs "cite[d] no cases holding that public official status erodes with the passage of time." *Id.* Indeed, the Fifth Circuit recognized that other jurisdictions have held that "ex-public officials must prove that 'actual malice' prompted speech concerning their in-office activities." *See id.* (collecting cases); *cf. Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 435–36 (5th Cir. 1987) (concluding that once an individual becomes a public figure, he "cannot erase his public-figure status by limiting public comment and maintaining a low public profile").

We agree with this reasoning and hold that based on the specific facts of this case, Fernandez, as a former public official, was a public figure with respect to the publication of the challenged statements because such a short time (less than one year) had passed between his resignation and the allegedly defamatory statements, and because the statements related to his conduct while he was a public official as well as his resignation from city council and his subsequent activity and involvement in the political campaign to recall Joplin.[6] *See Scruggs v. City of Bowie*, No. 7:14-cv-00129-O, 2015 WL 13450692, at *4 (N.D. Tex. Dec. 17, 2015) (order) (holding former police

---

[6]In support of his position that he is not a public figure, Fernandez primarily relies upon *Foster v. Laredo Newspapers, Inc.*, a case from the Supreme Court of Texas, for the proposition that for a former public official to be considered a public figure, the allegedly defamatory statements must clearly relate to the former official's conduct as a councilmember. 541 S.W.2d 809 (Tex. 1976). Fernandez's reliance on *Foster* is misplaced because Fernandez's petition specifically alleges that Appellants "falsely stat[ed] that 'Frank [Fernandez] is a convicted criminal, he [committed] robbery *while being a Kennedale city council member.*'" [Emphasis added.]

18

officer was still public figure with respect to defamation claims stemming from published statements in press release after his termination).

Accordingly, in step two of the TCPA analysis, Fernandez must establish that Appellants made the allegedly defamatory statements under the actual malice standard.

## 2. First Element – Falsity of Statements

There is no dispute that the challenged statements made in a Facebook message, in Facebook video captions, and in the videos themselves were published. Therefore, we focus our analysis of the first element on whether Fernandez set forth clear and specific evidence that the statements were false. *Bentley v. Bunton*, 94 S.W.3d 561, 586–87 (Tex. 2002) (explaining that when the plaintiff is a public official, he must initially prove that defamatory statements made about him were false and thus it is not the defendants' burden to prove the truth of their statements as an affirmative defense).

With respect to the first element, a publication is false if it "is not substantially true." *Neely*, 418 S.W.3d at 63; *Rodriguez v. Gonzales*, No. 14-17-00667-CV, 2018 WL 6614153, at *3 (Tex. App.—Houston [14th Dist.] Dec. 18, 2018, no pet. h.) (quoting *Neely* for the proposition that "[r]egarding the first element, a publication is false if it 'is not substantially true'"). A publication is not substantially true if, taken as a whole, it is more damaging to the plaintiff's reputation than a truthful publication would have been. *See Neely*, 418 S.W.3d at 63. "A publication's meaning is determined 'by

19

construing the publication or broadcast ["]as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.["]'" *Rodriguez*, 2018 WL 6614153, at *3 (quoting *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016)). In other words, we determine falsity by first ascertaining the "gist" of the publication. *See Neely*, 418 S.W.3d at 63–64. The supreme court has recently affirmed that "it does not matter whether the gist of the article is analyzed before or after the individual statements, as long as it is assessed independently." *Dallas Symphony Ass'n, Inc. v. Reyes*, No. 17-0835, 2019 WL 1090771, at *7 (Tex. Mar. 8, 2019).

### a. Elam's statements

Elam's first statement that Fernandez complains of was in the following Facebook message:

> You are another fake supporter . . . do you know something I don't? What arrest record? Teach me, before you run your slobbering mouth and try to speak my name, you may wish to do some research yourself. All of the arrest records were staged by the police for undercover work with the Dallas Police & County task force back in the seventies and eighties, You are so quick to put a noose around my neck without knowing the facts. Such fools. No I was not ever into drugs, I am a happily married man with an upstanding record here in Kennedale for the 24 years that we have lived here. You people are so delirious and ate up with hate. *Frank is a convicted criminal, he commite [sic] robbery while being a Kennedale city council member.* . . . another history lesson about the crimes right here in Kennedale. Your group you foolish person, one member was arrested for stealing over $50,000 from Kennedale while in public office here in Kennedale and another for putting his hands all over young teenage girls while he was also in office here in Kennedale. Now lets [sic] look at my past, I grew up in the heart of Oak Cliff, went to public schools there. Never got in any trouble as a teen. I went and

20

Joined the Army when I was 18, came out got married, did end up getting a divorce, I got custody of my daughter and was a single parent. [Emphasis added.]

Fernandez also complains that Elam posted a video on a Facebook group page and captioned the video with the word "convicted" and suggested that Fernandez was a "convicted robber" who had been "found guilty."

### b. Palmer's statements

Fernandez complains about a statement from Palmer in the beginning of a video, in which Palmer stated that he was updating "the story we posted two weeks ago involving disgraced former Kennedale city councilmember Frank Fernandez and *his failed robbery* of [a] coin shop." [Emphasis added.] Fernandez also complains that Palmer stated that Fernandez is a "known thief" who "stole from somebody," that Fernandez lied while gathering signatures for a political campaign, and that he took part in "corruption" and a "cover-up."

### c. Weber's statements

Fernandez's complaint regarding Weber is that he is liable as the administrator of the Facebook group where the allegedly defamatory statements were published.

### d. The gist

### *"convicted criminal" who was "found guilty"*

Although Fernandez complains about several different statements from Elam and Palmer, the main thrust of Fernandez's complaint appears to be the statements that he is a convicted criminal who had been found guilty of robbery when Fernandez

21

maintains that he has not been charged with robbery and that he has not been convicted of any crime.

To be sure, Fernandez was not "convicted" of theft of the silver bar. A conviction is defined as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." *Conviction*, Black's Law Dictionary (10th ed. 2014). In Fernandez's case, there was no trial with the State admitting evidence establishing proof of his guilt, a jury verdict of guilty, or a final judgment providing the same. Indeed, the order of deferred adjudication expressly states, "Adjudication of Guilt Deferred."

However, Fernandez did plead guilty to the offense of theft of more than $750 but less than $2,500, he received twenty months of community supervision, and he had to pay a $500 fine plus court costs. As we noted, the test we apply is not one that makes a clear demarcation of black and white between a statement being true or false. The standard is deciding when a statement becomes so grey that it becomes actionable. We test the defamatory character of the statement by taking it as a whole and looking at it through the lens of a person of average intelligence. Our goal is to decide whether, to that person of average intelligence, the statement made is more damaging than the truth would have been, and even statements that exaggerate may still be substantially true through that lens:

> "The test used in deciding whether a statement is substantially true involves considering whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average listener,

22

than a truthful statement would have been. This evaluation involves looking to the "gist" of the statement." *Austin*[ *v. Inet Techs., Inc.*], 118 S.W.3d[ 491,] 496 [(Tex. App.—Dallas 2003, no pet.)] (citing *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990)); *see also Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (noting "the substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details"); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69 (Tex. App.—Waco 1990, no writ) (stating a publication is substantially true even if it "greatly exaggerate[s]" plaintiff's misconduct, as long as "an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration").

*Ruder v. Jordan*, No. 05-14-01265-CV, 2015 WL 4397636, at *3 (Tex. App.—Dallas July 20, 2015, no pet.) (mem. op.).

We have found three cases that deal with a situation analogous to the statement that we review.

A federal district court in Texas has resolved a similar set of facts in which a plaintiff had sued a news outlet for defamation when the outlet ran a story that the plaintiff had been "convicted" of "a crime that was sexual in nature." *Williams v. Cordillera Commc'ns, Inc.*, 26 F. Supp. 3d 624, 631 (S.D. Tex. 2014). In that case, the plaintiff had not been convicted of a crime but had confessed to the crime of telephone harassment, signed a written plea of guilty to the charge, and had entered into a deferred prosecution agreement. *Id.* This resolution punitively required him to stay away from the victim, to pay restitution, and to obtain therapy from a sex offender therapist. *Id.* at 632. The federal district court reasoned that "[w]hile [the plaintiff] was not convicted of a crime, he confessed to the crime and was punished

23

for it," so "[t]he damaging issue in the mind of an ordinary viewer with respect to [the plaintiff's] reputation [of] guilt and [the news outlet's] statement that [the plaintiff] had been convicted did not carry a heavier sting than the truth of his confessed guilt." *Id.* Therefore, the federal court concluded, "The statement that [the plaintiff] was convicted was substantially true." *Id.*

A federal district court in Tennessee that was presented with a similar argument reached a similar conclusion. There, the plaintiff claiming defamation asserted that he pleaded guilty and received "Judicial Diversion" and that "[d]eferral is not the same thing as being a 'Convicted Felon' [so] the news reports were not true and not entitled to protection under the truth defense." *Molthan v. Meredith Corp.*, No. 3:17-CV-00380, 2018 WL 691338, at *4 (M.D. Tenn. Feb. 2, 2018), *report and recommendation adopted*, No. 3:17-CV-00380, 2018 WL 2387235 (M.D. Tenn. May 25, 2018), *appeal dismissed*, No. 18-5664, 2018 WL 4621952 (6th Cir. Aug. 17, 2018). More specifically,

> Plaintiff contends that judicial diversion precludes an adjudication of guilt and he maintains that "although the meaning [of conviction] differs based on context, [ ] it generally refers to a step in the judicial process, namely the "Verdict" phase (finding of guilt)." He explains that because he "never reached a 'Verdict' or 'Finding of Guilt' in his criminal case and instead received Judicial Diversion, it would appear certain that he has been immunized from the characterization of 'Convicted Felon' in all instances except those enumerated within the statute itself.

*Id.* at *5 (internal citation omitted). The United States Magistrate Judge recommended dismissal of the plaintiff's defamation claim, and in adopting the recommendation over the plaintiff's objections, the United States District Judge concluded that

24

"Plaintiff's distinction between being 'convicted' and 'pleading guilty' to later receive a deferred conviction is immaterial for purposes of this case." *Molthan*, 2018 WL 2387235, at *2.

Finally, a federal district court in Virginia similarly granted summary judgment on a plaintiff's claim that he had been defamed when the defendants "portrayed him, through constant telephone calls and letters, to other members of the . . . community as a 'convicted felon.'" *Carpenter v. Drechsler*, Civ. A. No. 89-0066-H, 1991 WL 332766, at *3 (W.D. Va. May 7, 1991) (mem. op.), *aff'd*, 19 F.3d 1428 (4th Cir. 1994). Interestingly, the alleged conviction had occurred in Texas, and the plaintiff argued that because "a final adjudication of his guilt in the Texas proceedings was deferred pending his successful completion of ten years on probation without further criminal incident, . . . he is not a *convicted* felon and that characterizing him as such is patently defamatory." *Id.* In a footnote, the district court more fully explained the legal subtleties of the plaintiff's objection:

> [T]he plaintiff's objection to the label "convicted felon" seems to be grounded in the fact that, in the Texas criminal proceeding, he pled guilty to the aggravated-promotion-of-prostitution charge under a plea agreement whereby a final "adjudication of his guilt would be deferred" as long as he completed his probation period without further criminal incident.

*Id.* at *6 n.6.

The district court rejected this argument and concluded that although in some "hyper-technical sense," the statement that "the plaintiff is a 'convicted felon,' when

25

he is only a 'confessed felon,' may not fully incorporate all of the subtleties of the plea agreement into which he entered with the prosecution," there is nothing "substantially inaccurate about the statement and, as a matter of law, cannot subject the defendants to any type of liability for defamation." *Id.*

We find the reasoning of these federal district courts persuasive and applicable to our case. While a licensed attorney may be able to distinguish a guilty plea with an order of deferred adjudication from a conviction, we believe the average reasonable person would not. That is, the statements that Fernandez was a "convicted" criminal are no more damaging than if Appellants had more accurately stated that Fernandez pleaded guilty to the charge of misdemeanor theft and that the trial court deferred a finding of guilty, placed Fernandez on deferred adjudication-community supervision, and ordered him to pay a $500 fine. *See Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 681 (Tex. App.—El Paso 2001, no pet.) ("[A] statement is substantially true if it is no more damaging than a true statement would have been."); *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 472–73 (Tex. App.—Dallas 1994, writ denied).

We appreciate the dissent's perspective on this issue but believe that the perspective that we adopt is the proper one. The dissent begins with an accurate and thorough discussion of the Texas Code of Criminal Procedure and the distinctions found in the law between those convicted of a crime and those who have received deferred adjudication. The statement that Fernandez had been convicted of a crime is not true. But the dissent concludes that the distinctions highlighted in the code of

26

criminal procedure and that we as lawyers and judges deal with everyday are apparent to "those of us who are 'ordinary'" and that the mischaracterization of Fernandez's status makes the statement grey enough—not substantially true enough—to be actionable. We have cited three cases applying the person-of-ordinary-intelligence standard that reach the opposite conclusion. Though they are not precedents that bind us, we do find them persuasive.

The dissent also suggests that we resolve this case with an approach that improperly parses the statements at issue by looking at words such as "convicted" in isolation and not in the context of the full phrase used, such as "convicted robber." Part of that emphasis comes from the approach adopted by Fernandez's counsel when he sent his cease-and-desist letter that we will discuss in detail below. That letter focused on the suggestion that Fernandez had been convicted of a crime. With that focus, we found it reasonable to focus initially on the sting of the word "convicted" in isolation. And, as explained above, the supreme court has recently affirmed that individual statements may be assessed before analyzing the gist, as long as the gist is independently analyzed. *Dallas Symphony Ass'n, Inc.*, 2019 WL 1090771, at *7.[7]

---

[7]In a footnote, the dissent highlights that Appellants' declarations state that "I am aware that there are some legal processes that treat 'deferred adjudication' similar to 'convicted.'" These statements are vague, but we do not view them as a confession that Appellants ignored the legal distinction, nor do they alter how a person of ordinary intelligence would view the use of the word "convicted."

27

Also, we note below that we do find the suggestion that Fernandez was a robber to not be substantially true, but that is because of the additional element of bodily injury or threatening bodily injury that the offense connotes. It is that distinction that we find central and not any additional sting that results from the failure to distinguish between a convicted robber and one who received deferred adjudication.

Therefore, because the gist of the statements—that Fernandez was a "convicted criminal"—is substantially true, we conclude that Fernandez did not carry his burden under step two for his defamation claims based on these statements.

### *"known thief" who "stole from somebody"*

Fernandez also asserts a defamation claim for a video posted by Palmer, which described Fernandez as a "known thief" who "stole from somebody." It is undisputed that Fernandez was charged with theft of property of more than $750 but less than $2,500. The charging instrument, which was attached to Fernandez's petition, specifies that Fernandez was alleged to have "unlawfully appropriate[d] by acquiring or otherwise exercising control over property, namely a silver bar, of the value of $750 or more, but less than $2,500, with intent to deprive the owner . . . of the property."

As we explained above, Fernandez pleaded guilty to this offense and as part of his plea, he was placed on twenty months' deferred adjudication-community supervision and was ordered to pay a fine of $500 plus court costs. Viewing the

allegations in the charging instrument in connection with Fernandez's guilty plea, fine, and terms of community supervision, we conclude that the gist of the statements—that Fernandez was a "known thief" who "stole from somebody"—is substantially true and, to any degree, no more damaging than a true statement would have been. *See Provencio*, 44 S.W.3d at 682; *Rogers*, 889 S.W.2d at 472. Thus, Fernandez did not carry his burden under step two for his defamation claims based on these statements.

### *"committed robbery," "convicted robber," "failed robbery"*

But Appellants did not simply call Fernandez a "convicted criminal" or a "known thief." Fernandez alleges that Elam posted a message on a Facebook group page stating that Fernandez had "commite [sic] robbery" and captioned a video on a different Facebook group page, which stated that Fernandez is a "convicted robber [who had] be[en] found guilty." And Palmer stated in a video that Fernandez had engaged in a "failed robbery."

Theft—what Fernandez was actually charged with—and robbery are related but distinct offenses. *Compare* Tex. Penal Code Ann. § 31.03(a) (defining theft), *and Webster's Third New Int'l Dictionary* 2369 (2002) (defining theft as "the felonious taking and removing of personal property with intent to deprive the rightful owner of it"), *with* Tex. Penal Code Ann. § 29.02(a) (providing elements for the offense of robbery, which include theft), *and Webster's Third New Int'l Dictionary* 1964 (defining robbery as "a larceny from the person or immediate presence of another by violence or threat of violence"). Specifically, robbery incorporates theft and adds to it an element of

intentionally, knowingly, or recklessly causing bodily injury to another or threatening bodily injury to another. *See Cooper v. State*, 430 S.W.3d 426, 430–31 (Tex. Crim. App. 2014) (Keller, J., concurring) ("The requirement that there be theft activity is a common element to the different statutory methods of committing robbery.").

So while robbery and theft are "closely related crimes," the "distinction between the two offenses lies in the antecedent violence, either actual or threatened, which is perpetrated on the victim of the robbery." *Ex parte Evans*, 530 S.W.2d 589, 591 (Tex. Crim. App. 1975); *Mann v. Scott*, 41 F.3d 968, 977 (5th Cir. 1994) (explaining that in Texas, "[r]obbery, by statutory definition, is essentially 'theft plus'—namely, it is theft accomplished by the use of physical force or threats of bodily injury"). Because of the requirement of antecedent violence, either actual or threatened, against an individual, the offense of robbery necessarily implicates another flesh-and-blood person, whereas theft may be committed against businesses or entities. *Cf. United States v. Davis*, 487 F.3d 282, 286 (5th Cir. 2007) ("To commit robbery, an individual must interact with the victim in order to cause bodily injury or place the victim in fear of it."); *Scott v. Tanner*, No. 01-02-00668-CV, 2003 WL 22862806, at *1 n.1 (Tex. App.—Houston [1st Dist.] Dec. 4, 2003, no pet.) (mem. op.) (recognizing "that people, not parks, are 'robbed'" despite parties' erroneous use of the term "robbed").

In light of the foregoing, we conclude that Elam's statements that Fernandez is a convicted "robber" who was "found guilty" and that he "[committed] robbery" and Palmer's statement that Fernandez engaged in a "failed robbery" suggest that in

30

addition to theft, he intentionally, knowingly, or recklessly caused or attempted to cause another bodily injury. Indeed, by calling Fernandez a convicted "robber" who had engaged in a "failed robbery," Elam's and Palmer's statements have falsely imputed to Fernandez the additional act of committing or attempting to commit violence or threatening violence against a person. *See Davis*, 487 F.3d at 287 (concluding robbery offense under Texas statute qualifies as a violent felony under federal law because a violation of the statute "poses a substantial risk of violent confrontation, [and] there is a substantial risk that physical injury will result"). Fernandez was not charged with nor did he plead guilty to robbery. Rather, he was charged with and pleaded guilty to the misdemeanor theft of a silver bar.

Therefore, the gist of Elam's statements referring to Fernandez as a "robber" and the allegation that he was "found guilty" of "robbery" and Palmer's statement that Fernandez attempted a "failed robbery" was not substantially true because the statements were more damaging than the true statements that Fernandez was charged with misdemeanor theft and pleaded guilty to it. *See Campbell v. Clark*, 471 S.W.3d 615, 627 (Tex. App.—Dallas 2015, no pet.) (concluding defamation plaintiff satisfied his step-two burden under the TCPA and established by a preponderance of evidence that "statements in [an] article and mailer—including statements . . . that accused [the plaintiff] of corruption in obstructing justice—were presented as objectively verifiable" and thus defamatory). Fernandez carried his step-two burden with respect to these statements.

## *"corruption" and "cover-up"*

Fernandez's next allegation concerns Palmer's statements in the videos and their suggestion of "corruption" and "cover-up" regarding Fernandez's resignation from the city council. Specifically, Palmer attempts to tie together Fernandez's arrest, a quote from the mayor in an article in the *Fort Worth Star-Telegram* in which the mayor stated that Fernandez had tendered a resignation letter, subsequent statements from the mayor and Fernandez that Fernandez had verbally resigned due to health reasons, and the mayor's subsequent refusal to speak to Palmer at a public event at which Palmer claims he received a criminal trespass warning at the mayor's urging. Because Fernandez apparently continued to be an active supporter of the mayor and because Palmer claims that city employees told him that Fernandez's resignation letter was "sealed," Palmer theorized that there was "corruption" and a "cover-up" to conceal from the public the real reason Fernandez resigned—his arrest for theft of the silver bar.

"A defamatory statement must be directed at the plaintiff as an ascertainable person to be actionable." *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Moreover, "[t]he false statement must point to the plaintiff and no one else." *Klentzman v. Brady*, 456 S.W.3d 239, 254 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 515 S.W.3d 878 (Tex. 2017).

Although it is obvious that Fernandez may enjoy some benefit from the alleged "cover-up" and "corruption"—i.e., less publicity of his arrest—and it is plausible that

32

Fernandez may have asked the city to seal his resignation letter or otherwise downplay the relationship between his arrest and resignation, the gist of the statements when read together in light of the surrounding circumstances suggests that they are directed not at Fernandez but at the mayor. Fernandez was helping the mayor's election campaign, so the benefit of any alleged "corruption" or "cover-up" would primarily benefit the mayor. Moreover, it is unclear how Fernandez could engage in any "corruption" or "cover-up" when he was no longer a councilmember at the time of the alleged "corruption" and "cover-up." Finally, the video refers to a newspaper quote from the mayor that Fernandez had tendered a resignation letter and then shows Palmer questioning the mayor following a public meeting, ostensibly to expose that the mayor is covering up the real reason for Fernandez's resignation.

Therefore, we conclude that the statements about "corruption" and a "cover-up" are not actionable false statements about Fernandez because the gist of the statements is directed not at Fernandez, but at the mayor for allegedly engaging in "corruption" and a "cover-up" in order to protect a political supporter and campaign worker. Fernandez failed to carry his step-two burden.

### *"lied when gathering signatures for a Kennedale political campaign"*

Fernandez's final allegation concerns Palmer's statement that Fernandez lied when gathering signatures for the petition to recall Joplin. Although the statement appears several times throughout the record, the allegation of lying when gathering

signatures is, in every instance but one, directed at a "paid consultant," not Fernandez. Thus, these statements cannot support the first element of Fernandez's defamation claim because the allegation of lying is directed at the "paid consultant," not Fernandez. *See id.*

However, at the end of one of the videos, Palmer asks a Kennedale resident what she thinks about Fernandez "gathering signatures, *telling people lies in order to get them to sign the petition.*" [Emphasis added.] While calling someone a liar or a crook in a general sense is not defamatory on its face, Palmer specified that Fernandez had lied to obtain signatures for the recall petition, so Palmer's statement that Fernandez was "telling people lies in order to get them to sign the [recall] petition" could be an actionable false statement. *See Billington v. Houston Fire & Cas. Ins. Co.*, 226 S.W.2d 494, 496 (Tex. App.—Fort Worth 1950, no writ) (holding words such as "liar" and "crook" in isolation are not actionable per se). But unlike other portions of his affidavit, Fernandez does not specifically dispute the allegation that he told lies in order to get people to sign the recall petition. Thus, Fernandez has failed to provide clear and specific evidence of the first element of his defamation claim that Palmer's statement that Fernandez lied to get people to sign the recall petition is false.

Having determined that Fernandez only set forth clear and specific evidence of the first element of his defamation claims with respect to Elam's statements that Fernandez is a "convicted robber" who was "found guilty" and that he had committed "robbery," and Palmer's statement that Fernandez engaged in a "failed

34

robbery," we next analyze whether Fernandez carried his step-two burden of the second element of defamation for these statements.

### 3. Second Element – Defamatory Statement

A defamatory statement is one that "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code Ann. § 73.001. "A statement may be unpleasant, abusive, false, or objectionable without being defamatory in light of the circumstances." *Campbell*, 471 S.W.3d at 625.

"Whether a publication is capable of a defamatory meaning is initially a question for the court." *Turner*, 38 S.W.3d at 114; *Simmons v. Ware*, 920 S.W.2d 438, 449 (Tex. App.—Amarillo 1996, no writ). To make this determination, courts should consider whether the words used are reasonably capable of defamatory meaning by considering how a person of ordinary intelligence would perceive the allegedly defamatory statement as a whole. *Bentley*, 94 S.W.3d at 579; *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987).

However, the Supreme Court of Texas has characterized some statements as "defamation per se" when they are "so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013) (footnote omitted). In this usage, "[a] statement that injures a person in her office, profession,

or occupation is typically classified as defamatory per se." *Id.* at 64. "[W]hether a statement qualifies as defamation per se is generally a question of law." *Lipsky*, 460 S.W.3d at 596.

"Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se." *Id.* Thus, we hold that the statements that Fernandez is a "convicted robber" who "commite [sic] robbery" and engaged in a "failed robbery" are false accusations of a crime and are thus defamatory per se. *See id.*

Therefore, we conclude that Fernandez has set forth clear and specific evidence to support the second element of his defamation claims with regard to Elam's statements that he was "found guilty" of "robbery" and is a convicted "robber" and Palmer's statements that Fernandez engaged in a "failed robbery." *See Campbell*, 471 S.W.3d at 627 (concluding defamation plaintiff satisfied his step-two burden under the TCPA and established by clear and specific evidence that statements that "accused [the plaintiff] of corruption in obstructing justice—were presented as objectively verifiable" and thus defamatory).

### 4. Third Element – Actual Malice

Having concluded that these statements are defamatory, we now consider whether Fernandez established clear and specific evidence of the third element of his defamation claims—that Elam and Palmer acted with actual malice. *See McLemore*, 978 S.W.2d at 571; *Simmons*, 920 S.W.2d at 449.

36

In *Schofield*, our court recited the difference between actual malice in a defamation context and malice in its ordinary context:

> As the supreme court explains, the concept of "actual malice" in the context of a defamation action is significantly different from the meaning commonly attributed to the word "malice":
>
> > Actual malice in a defamation case is a term of art. Unlike common-law malice, it does not include ill-will, spite, or evil motive. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Rather, to establish actual malice, a plaintiff must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *New York Times*, 376 U.S. at 279–80, 84 S. Ct. 710[, 726]. Reckless disregard is also a term of art. To establish reckless disregard, a public official or public figure must prove that the publisher "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323[, 1325] (1968).
>
> *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000).

2017 WL 2180708, at *15; *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). And, recklessness is not the same as negligence but again requires a high degree of awareness of probable falsity.[8] "Thus, the constitutional focus is on the defendant's

---

[8]One appellate court has explained reckless disregard as follows:

"[The] reckless [disregard of the truth] is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731, 88 S. Ct. at 1325. "The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had 'a high degree of awareness of . . . probable falsity.'" *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 2696 . . . (1989) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 216 . . . (1964)). To demonstrate that a defendant made a statement with "a high

attitude toward the truth, not his attitude toward the plaintiff." *Greer v. Abraham*, 489 S.W.3d 440, 444 (Tex. 2016).

Here, the only evidence Fernandez points to in support of actual malice is that Appellants kept the defamatory statements posted on the Facebook group page for at least one month after they had been served with a cease-and-desist letter. Fernandez cites no authority to support the proposition that the failure to immediately comply with a cease-and-desist letter is evidence of actual malice.[9]

Moreover, upon examination, the cease-and-desist letter does not specifically challenge the statements that Fernandez committed "robbery" and is a convicted "robber" who was "found guilty" or that Fernandez engaged in a "failed robbery" but

---

degree of awareness of probable falsity," the plaintiff must show, not negligence on the part of the defendant in ascertaining the truth, but that the defendant had actual subjective doubt about the truthfulness of the statements. *Id.* at 688, 109 S. Ct. at 2696 (quoting *St. Amant*, 390 U.S. at 731, 88 S. Ct. at 1325). A defendant's negligent failure to investigate the veracity of his sources cannot constitute malice. *Id.* at 733, 88 S. Ct. at 1326; *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 756 (Tex. 1984); *Johnson v.* [*Sw.*] *Newspapers Corp.*, 855 S.W.2d 182, 188 (Tex. App.— Amarillo 1993, writ denied). A plaintiff's allegation that the defendant was negligent in addressing the truth of a statement will be successful only when "the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation [or when] there are obvious reasons to doubt the veracity of [his sources]." *St. Amant*, 390 U.S. at 732, 88 S. Ct. at 1326.

*Morris v. Dallas Morning News, Inc.*, 934 S.W.2d 410, 420 (Tex. App.—Waco 1996, writ denied).

[9]Although the specific date is not clear, the parties all appear to agree that the posts were taken down from the Facebook group page between one and two months after the cease-and-desist letter was sent to Appellants.

instead focuses on the falsity of the allegations that Fernandez was a "convicted criminal":

> Specifically, you are publicizing *that my client is a convicted criminal.* That of course is false. Your actions are intended to hurt my client and are done with malevolence and with forethought.
>
> . . . .
>
> [P]ublicizing *that my client is a criminal or has been convicted of committing a crime* will not be tolerated. Your failure to [heed] this warning will almost certainly find one or all of you in a court of law.
>
> Demand is further made for you to remove, without delay, *all references to my client being convicted of theft or convicted of any criminal act*, from all web sites, internet locations as well as social media posts and any other form used to publicize these or similar statements as they are false. [Emphasis added.]

Although we explained above why statements that Fernandez was convicted of robbery were not substantially true even though statements that Fernandez was convicted of theft were substantially true, we believe that the legal distinctions between the two offenses are likely too technical to be known by reasonable people of ordinary intelligence. *See Scott*, 2003 WL 22862806, at *1 n.1 (clarifying "that people, not parks, are 'robbed'" because the parties—who were represented by counsel—had erroneously referred to an incident in which a skate park was "robbed").

*Minett v. Snowden*, a recent memorandum opinion from the Dallas Court of Appeals, supports our conclusion. No. 05-18-00003-CV, 2018 WL 2929339, at *9 (Tex. App.—Dallas June 12, 2018, pets. denied) (mem. op.). In *Minett*, a candidate for the local school board filed a defamation lawsuit against a defendant who made a

39

Facebook post that stated the candidate had an undisclosed past criminal arrest and conviction for serving alcohol to a minor. The defendant made a flyer that included the assertion of an undisclosed past criminal arrest but also added a specific "inmate number" for the candidate that the Facebook post did not contain, which indicated that the school board candidate had also served time in jail. *Id.* at \*1–2.

The defendant filed a TCPA motion to dismiss, which the trial court denied. *Id.* at \*1. Although the Dallas Court of Appeals reversed in part with respect to the Facebook post, it affirmed the denial of the TCPA motion to dismiss with respect to the flyer because it had included the inmate number, which falsely conveyed the meaning that the school board candidate had actually been incarcerated and assigned a number as an inmate. *Id.* at \*9. Indeed, the inmate number appeared to be made up from whole cloth because while the school board candidate had been charged with and found guilty of misdemeanor delivery of alcohol to a minor and sentenced to thirty days in jail, his sentence was probated, and he never served any jail time. *Id.* at \*10. Thus, *Minett* concluded that the school board candidate set forth clear and specific evidence of actual malice. *See id.*

Had Appellants accused Fernandez of some obviously fabricated, wholly unrelated offense, that could perhaps be clear and specific evidence of reckless disregard for the truth to support actual malice. But, because theft and robbery are characterized as "closely related" offenses, with the legal distinction between the two likely unknown to the mind of a person of ordinary intelligence, Fernandez needed,

40

but failed, to show that Appellants actually knew the difference between the two offenses and still alleged that Fernandez had committed "robbery." *See Evans*, 530 S.W.2d at 591. Indeed, "[a]n understandable misinterpretation of ambiguous facts does not show actual malice." *Lane v. Phares*, 544 S.W.3d 881, 891 (Tex. App.—Fort Worth 2018, no pet.) (quoting *Bentley*, 94 S.W.3d at 596).

Finally, to the extent that Fernandez complains that Elam and Palmer had a duty to verify his communications before publishing them, "the 'failure to investigate fully,' without more, is no evidence of actual malice." *Schofield*, 2017 WL 2180708, at *16 (quoting *Bentley*, 94 S.W.3d at 596). The failure to investigate will not rise to the level of actual malice without proof that Elam and Palmer acted with purposeful avoidance of the truth. *Id.* There is no clear and specific evidence in this record of any purposeful avoidance by Elam and Palmer.[10] *See id.*

Thus, because Fernandez has failed to set forth clear and specific evidence that Elam acted with actual malice when making the defamatory statements that Fernandez committed "robbery" and is a "convicted robber" and that Palmer acted with actual malice in stating that Fernandez engaged in a "failed robbery," we hold that the trial court erred by denying Appellants' motion to dismiss Fernandez's

---

[10]Accordingly, we cannot agree with the dissent that Palmer's declaration—in which he stated that he knew that Fernandez had pleaded guilty to theft and in which he acknowledged that he had inaccurately used the words "robber" and "robbery" but that he removed the video as soon as he knew the characterization was inaccurate—is clear and specific evidence of purposeful avoidance and actual malice. Nor is the mere fact that Elam admits to posting the statements on Facebook clear and specific evidence of purposefully avoiding the truth. *See id.*

41

defamation claims. And, because Fernandez's claim against Weber is derived wholly from Weber's position as the Facebook group administrator and the statements from Elam and Palmer published therein, Fernandez has likewise failed to provide clear and specific evidence to support his defamation claims against Weber.

The dissent takes issue with our resolution because Appellants made statements that do "not negate actual malice." Again, we respect the dissent's perspective but respectfully disagree. First, Fernandez carried the burden to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The dissent agrees that one part of that burden was to establish that Appellants had made the statements with actual malice.

And again, we are not dealing with a situation in which Appellants made statements that accused an innocent man of a crime he did not commit. Instead, we must begin with the basic fact that Fernandez did confess to a crime. Appellants' statements at times mischaracterized the crime but did so by a matter of degree. In the dissent's view, the lack of sensitivity to that matter of degree is evidence of actual malice—indeed, none of the evidence that Fernandez offered suggested that Appellants acted with awareness of this matter of degree. Instead, it appears that the standard applied is that they should have known. But that is a negligence standard and not an application of the principles of actual malice.

42

We understand that the consequence of denying a TCPA motion to dismiss is that the lawsuit goes forward. But the legislature has decided that in certain classes of legal actions, the plaintiff must clear hurdles of proof before the legal action can proceed. The dissent does not disagree that Fernandez's legal action fell within the ambit of the TCPA and thus brought with it the consequence of clearing the hurdles created by the legislature. We simply disagree with the dissent that Fernandez failed to clear the hurdle of presenting prima facie proof of actual malice in the unique circumstances of this case.

Accordingly, we sustain Appellants' second issue.[11]

## D. Claims not addressed in the TCPA motion to dismiss

Although not addressed by the parties, we note that in addition to defamation, Fernandez alleged a claim for IIED. He also filed a supplemental pleading in which he added a claim for conspiracy. Appellants' TCPA motion to dismiss did not address either claim, nor does their brief on appeal.

Our court has explained that simply because one claim may require dismissal under the TCPA, it does not *ipso facto* require that dismissal be granted on other claims not specifically addressed in the motion to dismiss. *Cf. Ghrist*, 2018 WL 3060331, at *5 n.9 ("Each cause of action stands or falls on its own merit; there is no bootstrapping effect for other causes of action that do not meet the criteria set forth

[11]Having sustained Appellants' first and second issues regarding Fernandez's defamation claims, we need not address Appellants' third issue. *See* Tex. R. App. P. 47.1.

43

in the [TCPA] statute"). Indeed, neither the TCPA nor cases interpreting it require that we perform a search of the record to find clear and specific evidence of each element of the plaintiff's claims. *See Cavin*, 545 S.W.3d at 72 (dismissing claims when the plaintiffs "have merely recited what they view as the essential elements of each claim; cited en masse to pages of the record they deem relevant to *some* unspecified element or elements of that claim; but provided no argument, analysis, or explanation as to which record reference supports which elements or (perhaps more critically) why that evidence would satisfy the specific element under the governing law").

Yet we recognize that in *Adams*, the Supreme Court of Texas recently reversed an appellate court decision affirming the denial of a TCPA motion to dismiss based in part on a party's failure to preserve an argument by failing to specifically raise it in the motion to dismiss. 547 S.W.3d at 896. The *Adams* court admonished that the appellate court "imposed too strict a view of error preservation in this context" and buttressed its position with reference to the TCPA's directive that its applicability is to be "based on a holistic review of the pleadings." *Id.* at 896–97. As the *Adams* court explained, once the defendant alleged in his motion that he was entitled to dismissal of the plaintiff's defamation claim because it was based on his right of free speech, "[h]e was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive." *Id.* at 896.

44

With these decisions in mind, we consider whether Fernandez's conspiracy and IIED claims—although not addressed in Appellants' motion to dismiss or the parties' briefs—require dismissal under the TCPA.

## 1. Conspiracy

Our examination of Fernandez's conspiracy claim reveals that it is derived wholly from his defamation claims. That is, he essentially alleges that Appellees engaged in a conspiracy to defame him. Therefore, because we have already concluded that Fernandez's defamation claims require dismissal under the TCPA, we likewise conclude that his conspiracy claim requires dismissal. *See Schofield*, 2017 WL 2180708, at *27 ("Because we find no clear and specific evidence that Howard and Schofield committed defamation against Gerda, Gerda's cause of action against Schofield and Howard for conspiracy to commit defamation against him must also fail.").

## 2. IIED

IIED is viewed under Texas law as a "gap-filler" tort, created to permit recovery in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Because this tort was never intended to provide plaintiffs an easier and broader way to allege claims that are already addressed by our existing civil and criminal laws, nor was it intended to replace or duplicate existing statutory or

45

common law remedies, if the gravamen of a plaintiff's complaint is another tort, "a claim for [IIED] will not lie regardless of whether the plaintiff succeeds on, or even makes the alternate claim." *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App.—San Antonio 2008, no pet.). In this context, to maintain an IIED claim alongside a defamation claim, the IIED claim must be supported by facts that are independent of the factual allegations supporting the defamation claim. *See id.* at 323 (explaining that "to maintain [an IIED claim], [the plaintiff] was required to allege facts independent of her defamation claim" and then affirming dismissal for the plaintiff's failure to allege such independent facts).

It appears that the gravamen of Fernandez's complaint is defamation, and it is possible that his IIED claim may ultimately be a recasting of his defamation claims. Fernandez did, however, allege in his petition that Elam had harassed him by stopping his car on the road in order to film him, which is a factual allegation independent of the factual allegations supporting Fernandez's defamation claims. And, Appellants do not set forth any argument in their brief that Fernandez's IIED claim implicates the TCPA, that Fernandez failed to meet his burden under step two regarding his IIED claim, or that Appellants have established by a preponderance of evidence each element of an affirmative defense to Fernandez's IIED claim.

Therefore, although Fernandez's allegations are scant, we cannot conclude that the trial court erred by denying Appellants' TCPA motion to dismiss on Fernandez's IIED claim because the issue was not raised either to the trial court or to this court on

46

interlocutory appeal. *See Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at *5 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.) ("Because the Spencers do not raise any argument in their brief asserting Overpeck failed to establish a prima facie case for each of the above-referenced elements of her [IIED] claim, we hold the trial court did not err in denying the Spencers' [TCPA] motion to dismiss as to this claim.").[12]

## E. Attorney's Fees and Sanctions

When appellate courts conclude that a trial court has erroneously denied a TCPA motion to dismiss, they "generally remand the fee issue." *Tatum v. Hersh*, 559 S.W.3d 581, 586 (Tex. App.—Dallas 2018, no pet.). Because we hold that the trial court erred by denying Appellants' TCPA motion to dismiss Fernandez's defamation claim, we remand for the trial court to consider the issue of attorney's fees and sanctions under section 27.009 of the civil practice and remedies code. *See id.*; *Rich*, 535 S.W.3d at 612; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

## VI. Conclusion

We affirm in part and reverse and remand in part. Having sustained Appellants' first and second issues with respect to Fernandez's defamation and conspiracy claims, we reverse the trial court's order as to those claims and render

---

[12]We do not believe this conclusion puts us at odds with the supreme court's admonition in *Adams* because the facts of the instant case are not of a defendant refining his TCPA arguments on appeal but of Appellants' complete failure to challenge Fernandez's IIED claim at any stage in this litigation.

judgment dismissing Fernandez's defamation and conspiracy claims pursuant to the TCPA.

Having concluded that Appellants wholly failed to address Fernandez's IIED claim, we affirm that part of the trial court's order denying Appellants' TCPA motion to dismiss as to the IIED claim and remand the case for further proceedings consistent with this opinion.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: March 28, 2019